IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **DANIEL A. STECK,** | Case 3:15 CV 946 |
| Plaintiff, | Judge Jeffrey J. Helmick |
| v. | Magistrate Judge James R. Knepp, II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff Daniel Steck ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b). (Non-document entry dated May 14, 2015). For the reasons stated below, the undersigned recommends affirming the Commissioner's decision to deny benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in December 2009, alleging an onset date of February 20, 2007. (Tr. 290-95). His claims were denied initially and upon reconsideration. (Tr. 149-65). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 168). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on January 31, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 77-112, 117-43). The Appeals Council granted Plaintiff's request for review, found error, and remanded the case for further evidentiary development and evaluation. (Tr. 144-47). Specifically, the Appeals

Council ordered the removal of all evidence that was not related to Plaintiff; mainly, school records which belonged to Plaintiff's son but were erroneously included in the record. (Tr. 18, 45-46). The ALJ held a second hearing on August 14, 2013, and denied benefits on October 1, 2013. (Tr. 15-39, 48-76). The Appeals Council denied Plaintiff's request for review making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on May 14, 2014. (Doc. 1).

## FACTUAL BACKGROUND[1]

### *Personal Background and Testimony*

At the first ALJ hearing in January 2012, Plaintiff was 49 years old and he lived with his two sons, two grandchildren, and his girlfriend. (Tr. 81). He testified he had a driver's license and had no problems driving; and he had past work as a commercial truck driver. (Tr. 83, 92). Plaintiff had also worked as a diesel mechanic helper, press operator, molding machine operator, and welder. (Tr. 70). Plaintiff stated he graduated high school but needed to take some special education courses. (Tr. 83). He testified he could not "read or spell at all" and required others to read his mail for him. (Tr. 93). Plaintiff stated he did not do tasks around the house. (Tr. 100-01).

He also testified to "emotional problems" which made it "hard for [him] to be around people"; he stated these problems occurred if he was around even one person. (Tr. 88, 91). Plaintiff stated when he was anxious he would rub his skin causing sores. (Tr. 96-97). He also reported spending the majority of his day in the bedroom because he felt safer and he only left to use the bathroom or go to appointments. (Tr. 97-98). Plaintiff stated these problems increased

---

1. Plaintiff's appeal focuses solely on his mental limitations; as such, all other issues are waived. *See Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990). Thus for the sake of brevity, the factual background summarized herein will only include evidence related to his mental limitations.

2

after his incarceration in 2008. (Tr. 98). He testified that medication did not help his anxiety. (Tr. 99).

At the second ALJ hearing on August 14, 2013, Plaintiff was 51 years old. (Tr. 326). Plaintiff testified to vision blackouts which he attributed to stress. (Tr. 57). He also reported an increased desire to be alone and stated he did not even like his girlfriend to be in the same room as him. (Tr. 58). Plaintiff testified he had been with his girlfriend for four or five years and they lived together in his house with his two sons and two grandchildren. (Tr. 58-59). He stated that he ate his meals alone in his bedroom and only left the house once or twice a month for appointments. (Tr. 64).

He again reported that medication was not helpful in relieving his stress and anxiety despite the fact his symptoms had worsened since the previous hearing. (Tr. 60-61). Plaintiff testified to poor memory that had also worsened in the last year; he attributed the loss of memory to an undiagnosed stroke. (Tr. 61-62). He reasserted that he was illiterate and required others to read for him; he testified to an inability to even read a grocery list. (Tr. 63). He further explained that while in prison when he requested medical treatment, he had to have other inmates spell everything for him. (Tr. 64).

Disability reports listed his relevant conditions as anxiety attacks, "can't read or write well", blackouts, "can't cope with people", depression, and post-traumatic stress disorder ("PTSD") related to his time in prison. (Tr. 330). In these reports, Plaintiff confirmed he graduated high school with the assistance of special education classes, had completed commercial truck driving school, and obtained his CDL. (Tr. 332, 344). Plaintiff's school records were destroyed so there is no evidence of an IEP but an unsigned statement asserts Plaintiff was likely in "some type of special ed[ucation]" based on his transcript. (Tr. 437). The transcript

3

confirms he graduated but contains no notation that he was involved in special education. (Tr. 438).

Plaintiff reported having anxiety attacks two to three times a day, being forgetful, and needing a reminder to take his medications. (Tr. 357, 365, 380, 395). However, he also reported he had no problem remembering or completing personal care chores such as dressing and bathing. (Tr. 365). Plaintiff stated he did not cook or perform any chores but was capable of driving, going out alone, and shopping for a short time, if necessary. (Tr. 366). He also stated he talked with others everyday and had never been fired from a job because of problems getting along with others; this is contrasted by his reports that he "cannot be with anyone in a relationship because of anxiety." (Tr. 368-69, 400).

*Relevant Medical Evidence*

At multiple times during his incarceration, Plaintiff requested mental health services because he felt like he was "having a nervous breakdown." (Tr. 599, 607, 622, 636). His initial mental health evaluations revealed no issues (Tr. 671, 677) but later reports indicate a need for mental health services (Tr. 668). Plaintiff reported depression, upset mood, and tearful affect but he did not receive medication. (Tr. 789-90, 798-800, 804-11). During counseling, Plaintiff expressed anxiety and depression but revealed full affect, positive eye contact, and intact concentration. (Tr. 816-19). He also expressed feelings of being in physical danger and was sometimes paranoid. (Tr. 817-18). While in prison, Plaintiff was administered a GAMA test[2]

---

2. General Ability Measure for Adults ("GAMA") is a brief, self-administered, nonverbal measure of intelligence. It is designed to be accessible to wide variety of people and educational backgrounds, particularly those who read at low levels. UNIVERSITY OF NORTHERN COLORADO, COLLEGE OF EDUCATION AND BEHAVIORAL SCIENCES, DEPARTMENT OF SCHOOL PSYCHOLOGY, http://www.unco.edu/cebs/schoolpsych/faculty/bardos/gama.html (last visited May 27, 2016).

where he scored in the average and low average range but the full score report was not included in the record. (Tr. 811-15).

After his release from prison in early 2009 until July 2010, Plaintiff was a patient of Palma Gill, M.D., where he intermittently complained of depression and anxiety. (Tr. 1025, 1027).

In April 2010, Plaintiff began treating at Unison Behavioral Health where he was diagnosed with PTSD and assigned a Global Assessment of Functioning ("GAF") score of 51, which was later reduced to 45.[3] (Tr. 1080, 1089). Plaintiff described good relationships with most of his children and blamed the majority of his problems with family and friends on his legal troubles. (Tr. 1082-83). He reported poor sleeping habits, eating regularly, and feelings of being overwhelmed. (Tr. 1083). Plaintiff confirmed he graduated high school and stated he had no history of learning disabilities and denied any barriers to learning. (Tr. 1083). Generally, Plaintiff complained of depression, anxiety, traumatic experiences, and an inability to maintain attention. (Tr. 1087).

In October 2010, a mental status exam revealed Plaintiff was well-groomed, had average eye contact, clear speech, logical thought process, mildly anxious mood, mildly flat affect, mildly impaired memory, limited insight, questionable judgment, and average intelligence. (Tr.

---

3. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, sever obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *Id.* at 34. A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

1172). On December 8, 2010, Plaintiff presented at River East Health requesting medication for his depression. (Tr. 1138).

Throughout 2011 Plaintiff saw Susan Thomas, MSN, and he reported intermittently taking medication for his depression and anxiety; the medication lapses were self-imposed despite reports the medication was helpful. (Tr. 1175-76, 1180, 1185, 1191). He reported poor sleep, anxiety, panic attacks, hypervigilance, and detachment from others. (Tr. 1177, 1187, 1194). Nurse Thomas almost consistently noted difficulty processing questions and retrieving information, poor memory and concentration, and recall issues. (Tr. 1177, 1192, 1202).

In March 2012, Plaintiff reported his mood as good despite being off his prescribed medication; but he was taking Xanax he was "buying off the streets". (Tr. 1348, 1353). He was observed to have normal speech, intermittent eye contact, circumstantial thought forms, and euthymic affect. (Tr. 1349). In May 2012, Plaintiff reported he was "not necessarily depressed" and thought maybe the medication was helpful. (Tr. 1355). He continued to report panic attacks and difficulty with attention, concentration, and memory. (Tr. 1355). At his next three medication management appointments, he was observed as cooperative, compliant with his medications, with intact memory, appropriate speech, organized thoughts, and controlled mood, but he still had difficulty processing questions. (Tr. 1357-61).

It was consistently noted from late 2012 through March 2013 that Plaintiff had difficulty communicating, had poor insight into his illness, poor judgment, poor persistence, low motivation, and unrealistic fears. (Tr. 1343-47). However, other records from this same time indicated his mood was controlled, he had an organized thought process, appropriate speech, no issues sleeping, and intact recent and remote memory. (Tr. 1367-1370).

*State Agency Reviewers*

A mental residual function capacity report was completed on July 8, 2008, by state agency psychologist Vicki Warren, Ph.D. (Tr. 531-33). She opined Plaintiff was moderately limited in his ability to understand and remember locations and detailed instructions, although he was not limited in remembering short and simple instructions. (Tr. 531). She further found no significant limitation in Plaintiff's ability to sustain concentration and persistence except as to his ability to carry out detailed instructions and to work without interruption from his psychological symptoms. (Tr. 531-32). Dr. Warren found no significant limitation in Plaintiff's social abilities and overall believed he had no significant limitations in adaptation except as to work place changes, where he would be moderately limited. (Tr. 532). She concluded Plaintiff was able to perform simple and repetitive tasks that did not require strict production standards. (Tr. 534).

Two years later, Dr. Warren diagnosed Plaintiff with major depression, anxiety, and PTSD, and rated him to have moderate limitation in activities of daily living; mild limitations in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 1047-60).

*Consultative Examinations*

On March 16, 2010, Plaintiff underwent a consultative examination with Daniel Watkins, Ph.D.; Plaintiff drove himself to the appointment and arrived with a friend. (Tr. 1037). He reported having been married for 23 years and raising seven children but he was divorced; he also reported having good relationships with his mother, children, and siblings. (Tr. 1037-38). Plaintiff reported he performed his self-care independently, and could (in theory) clean his house, do laundry, and shop with assistance. (Tr. 1041). Plaintiff stated he had never lived entirely independently but always with another adult. (Tr. 1041).

During the evaluation, Plaintiff was cooperative, maintained good eye contact, was adequately groomed, spoke coherently and at a normal rate with no tangentiality or loose associations; but he was depressed, with constricted affect, and had feelings of hopelessness and worthlessness. (Tr. 1039).  Plaintiff reported PTSD symptoms such as hypervigilance and exaggerated startle response; and he also reported anxiety attacks but denied sweating, palpations, or chest pain. (Tr. 1040). Dr. Watkins noted Plaintiff was alert and oriented, had adequate ability to sustain attention and concentration, could identify common themes, define words, and remember number sequences both forward and backward. (Tr. 1040). Dr. Watkins reported limited but intact insight and an ability to make simple judgment decisions. (Tr. 1040).

Following testing, Dr. Watkins determined Plaintiff had a full-scale IQ of 67 which places him in the mildly mentally retarded range, although he was unable to diagnose him as such. (Tr. 1041, 1044). Dr. Watkins also assessed Plaintiff with a GAF score of 50.[4] (Tr. 1042). He diagnosed Plaintiff with PTSD and major depressive disorder, recurrent. (Tr. 1041-42). Dr. Watkins opined Plaintiff had a moderate impairment in his ability to understand, remember, and follow instructions; no impairment in ability to maintain concentration, persistence, and pace of simple and repetitive tasks; no impairment in social functioning; and a marked impairment in his ability to withstand workplace pressures. (Tr. 1042-43).

On May 5, 2013, Plaintiff underwent a second psychological consultative examination with K. Roger Johnson, M.Ed. (Tr. 1264-71). Plaintiff reported an inability to cook but stated he could "do[ ] everything else for himself." (Tr. 1264-65).  Plaintiff again stated he had graduated high school with special education courses and also added he had taken vocational training in welding after high school. (Tr. 1265). He denied any problems in dealing with people. (Tr.

---

4. *Supra* pg.5, n. 3.

1265). Mr. Johnson noted Plaintiff's speech was clear and normal but vague, and he considered Plaintiff to be disingenuous. (Tr. 1266). Mr. Johnson observed "questionable signs of depression/abnormalities", normal eye contact, normal energy level, and mildly blunted affect. (Tr. 1266). Plaintiff did demonstrate logical thought content but showed problems in concentration; again, Mr. Johnson suspected malingering. (Tr. 1266). Mr. Johnson noted weak insight but adequate judgment for daily living, and minimal cognitive functioning in the borderline range. (Tr. 1266). He assessed a GAF score of 60.[5] (Tr. 1267).

Mr. Johnson opined Plaintiff had adequate functioning in maintaining concentration, persistence, and pace to perform simple tasks; an adequate ability to respond appropriately to others; and an ability to handle workplace pressures. (Tr. 1267-68, 1269-71).

*ALJ Decision*

In October 2013, the ALJ concluded Plaintiff had the severe impairments of degenerative changes of the thoracic spine, decreased hearing, intermittent visual disturbance, a cognitive disorder, post-traumatic stress disorder, and major depressive disorder; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 21-25). As this appeal only deals with mental limitations, the RFC recital here is restricted to only those limitations related to Plaintiff mental conditions. Plaintiff had the capacity to perform light work with "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only work-related decisions, with few, if any, work place changes." (Tr. 25-26). Considering the VE testimony and Plaintiff's age, work experience, and RFC, the ALJ found Plaintiff could perform positions such as cleaner/housekeeper, sorter, and folder. (Tr. 38).

---

5. *Supra* pg. 5, n. 3.

9

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which

10

       substantially limits an individual's ability to perform basic work activities?

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Commissioner considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he relied on redacted records to find Plaintiff had a high school education; and (2) he incorrectly evaluated Plaintiff under Listing 12.05C, where his analysis relied, at least in part, on a finding that Plaintiff had a high school education. (Doc. 14). The Court will address both of these arguments together in an analysis of the evidence which supported the ALJ's finding that Plaintiff did not meet Listing 12.05C.

*Listing 12.05C*

The listings streamline the disability decision-making process by identifying people whose impairments are more severe than the statutory disability standard such that their impairments would prevent them from performing any gainful activity – not just substantial

gainful activity – regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a); Social Security Rule (SSR) 83-19, at 90)). The listings create a presumption of disability making further inquiry unnecessary. *Id.* Each listing establishes medical criteria, and to qualify for benefits under a listing, a claimant must prove his impairment satisfies all the listing's specified medical criteria. 20 C.F.R. § 404.1525(d); *see also Zebley*, 493 U.S. at 530. To qualify for a listing, it is not sufficient for a claimant to almost meet the specified criteria, rather he must exactly satisfy the listing requirements. *See e.g., Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003); *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989).

The diagnostic description of intellectual disability in 12.05 refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Part 404, Subpt. P, § 12.05. To demonstrate intellectual disability, a plaintiff must establish three factors to satisfy the diagnostic description: 1) subaverage intellectual functioning; 2) onset before age twenty-two; and 3) adaptive-skills limitations. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009); *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003). Beyond these three factors, a plaintiff must also satisfy "any one of the four sets of criteria" in listing 12.05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Pertinent here, 12.05C requires a plaintiff to have a valid, verbal, performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Part 404, Subpt. P, § 12.05C.

To satisfy Listing 12.05C, Plaintiff must meet the criteria laid out in both the base diagnostic description and subsection C. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). The Commissioner does not dispute that Plaintiff meets the subsection C criteria but rather argues Plaintiff cannot be found disabled under the listing because he does not meet the "additional factors" in the diagnostic description. (Doc. 16, at 7); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 7 (6th Cir. 2004).

First, Plaintiff must show subaverage intellectual functioning before age 22. In support of this criterion, Plaintiff argues he did not complete high school, and if he did it was with the assistance of special education courses. (Doc. 14, at 10). However, poor academic performance, in and of itself, is not sufficient to warrant a finding of subaverage intellectual functioning before the age of 22. *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009). More importantly, however, the ALJ's finding regarding Plaintiff's academic history is supported by substantial evidence in the record.

Plaintiff has little in the way of evidence regarding his academic history. His school records were destroyed and thus, the school was only able to provide a copy of his final transcript. (Tr. 438). This transcript indicates that Plaintiff graduated; an assertion that is backed up by Plaintiff's statements on numerous occasions in the record. (Tr. 83, 332, 438, 502, 1038, 1083, 1265). Plaintiff attempts to argue that because the ALJ erroneously cited once to the redacted record of Plaintiff's son's school record, the finding that Plaintiff graduated high school is unsupported by substantial evidence. (Doc. 14, at 8-10). This argument is without merit because not only did the ALJ cite to other evidence at the same time but also, the testimony of the Plaintiff confirms the ALJ's conclusion. Therefore, the ALJ did not err by finding that Plaintiff graduated from high school.

However, Plaintiff also stated on numerous occasions that he was in special education courses in high school. (Tr. 83, 332, 502, 1038, 1083, 1265). Unfortunately, the actual physical transcript does not confirm his testimony; the only other evidence to support Plaintiff's assertion is an unsigned statement from an unidentified person at Lake School District who stated Plaintiff was likely in "some type of special ed[ucation]." (Tr. 437-38). Plaintiff argues the unsigned statement is evidence and the ALJ's failure to discuss it, is reversible error. (Doc. 14, at 9). Again, his argument fails. An ALJ is required to consider all the evidence in the record, but there is no requirement that the ALJ identify every piece of evidence that he considers. 20 C.F.R. §404.1513; *see Higgs v. Bowen,* 880 F.2d 860 (6th Cir. 1988); *see also, Anders v. Astrue*, 2008 WL 817105, *1 (E.D. Ky) (holding ALJ did not commit error by failing to state he considered a letter from claimant's mother when he stated he considered all the evidence of record). Thus, the failure to mention the unsigned statement is not error.

Additionally, a reviewing court is entitled to consider all the evidence in the record, even if the ALJ did not mention it. *Walker v. Sec'y of Health and Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989). In specifically reviewing the statement at issue, the unsigned letter contains no indication of who authored it, their qualifications, or their personal knowledge, if any, of Plaintiff's academic career. Furthermore, even taking the letter at face value, enrollment in special education courses, on its own, does not establish subaverage intellectual functioning before the age of 22. *See Eddy v. Comm'r of Soc. Sec.,* 506 F. App'x 510 (6th Cir. 2012); *Justice v. Comm'r of Soc. Sec.,* 515 F. App'x 538, 587 (6th Cir. 2013). Ultimately, consideration of that single statement would not affect the outcome of the ALJ's listing determination because, without more, special education classes are not sufficient to establish the listing. *Foster*, 279 F.3d at 352-55.

14

Plaintiff also argues the ALJ ignored evidence of Plaintiff's illiteracy which would establish the listing criterion. (Doc. 14, at 8-9). Plaintiff testified to not being able to read well at both hearings and in a function report; asserting others had to read his mail for him. (Tr. 63, 93, 330). However, other evidence in the record does not support such an extreme inability. The ALJ noted Plaintiff had graduated high school, completed commercial truck driving school, wrote requests for medical care while in prison, complained his visual blackouts interfered with his reading, and had books and a legal pad with writing on it during an evaluation while in prison. (Tr. 33, 438, 568, 601, 720-36, 792, 822, 1038, 1083, 1193). The ALJ even acknowledged decreased literacy skills were probable but that total illiteracy was not supported by the evidence in the record. In reviewing the record, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff was, to some degree, literate. In total, the evidence does not establish that Plaintiff had subaverage intellectual functioning prior to age 22; however, even assuming *arguendo* that he had subaverage intellectual functioning, Plaintiff cannot establish deficits in adaptive skills before 22.

The adaptive skills prong specifically evaluates social skills, communication skills, and daily living skills. *Hayes*, 357 F. App'x at 677 (*citing Heller v. Doe*, 509 U.S. 312, 329 (1993)). The ALJ noted that Plaintiff's functional history was not consistent with deficits in adaptive skills. (Tr. 25).[6] He cited Plaintiff's long and consistent work history at more than unskilled work, graduation from high school, completion of truck driving school, obtaining his CDL,

---

6. The ALJ stated that the consultative examiner found no deficits in adaptive functioning. (Tr. 25). Plaintiff argues this is a misstatement of the consultative examiner's report and the Commissioner agrees. (Doc. 14, at 11; Doc. 16, at 9). The consultative examiner only stated that he could not diagnose Plaintiff with mild mental retardation because there was no diagnosis of mental retardation prior to the age of 18. (Tr. 1041). Ultimately, this misstatement is irrelevant in light of the other evidence that supports the finding that Plaintiff did not have deficits in adaptive functioning.

15

working for fifteen years as volunteer firefighter, and raising a large family with his ex-wife. (Tr. 70, 83, 92, 332, 344, 1037-39, 1264-65). Further, Plaintiff testified to being able to complete all his self-care independently, paying his own bills, maintaining good social relationships with his family and a long-term girlfriend, and the ability to drive. (Tr. 58-59, 83, 365-69, 367, 533, 1041, 1264-65). In contrast, Plaintiff testified to an inability to complete household chores, a constant desire to be alone, and never having lived independently without another adult. (Tr. 64, 97-98, 100-01, 366, 1041). Although there is some evidence of adaptive skills deficits in the record, substantial evidence also supports that Plaintiff's functional history was inconsistent with the listing criterion.

Overall, Plaintiff's educational, social, and work histories do no establish that he had subaverage intellectual functioning and deficits in adaptive skills before the age of 22. *See Justice*, 515 F. App'x at 587 (ALJ had substantial evidence to find claimant did not meet Listing 12.05C where claimant had lengthy work history in variety of semi-skilled and unskilled work, dropped out of school after tenth grade, had borderline intellectual functioning, and could manage activities of daily living.); *see also Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492 (6th Cir. 2010); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2013). Thus, the ALJ did not err in finding that Plaintiff did not exactly meet the listing criteria. The ALJ adequately explained and supported with substantial evidence the reasons Plaintiff did not satisfy the diagnostic criteria of Listing 12.05C.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI is supported by substantial evidence, and therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).